IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

COREY SMALL and § 
TERRANCE HUDSON, § 
           Plaintiffs, § 
  § 
v. §       CIVIL ACTION NO. H-12-0029
  § 
ROBBINS & MYERS, INC., *et al.*, § 
           Defendants. § 

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 83] filed by Defendant Robbins & Myers Energy Systems L.P. ("R&M"), to which Plaintiffs Corey Small and Terrance Hudson filed a Response [Doc. # 95], and R&M filed a Reply [Doc. # 102].[1] Having reviewed the

---

[1]     Also pending is Defendants' Motion to Exclude Expert Testimony of William A. Conklin [Doc. # 82], to which Plaintiffs filed a Response [Doc. # 89], and Defendants filed a Reply [Doc. # 104]. Because Plaintiffs did not rely on expert testimony in opposition to R&M's Motion, the Motion to Exclude Expert Testimony is **denied as moot**.

    Also pending is the Motion for Summary Judgment [Doc. # 85] filed by Defendants Robbins & Myers, Inc. and Robbins & Myers Energy Systems, Inc., asserting that they are not proper Defendants in this case. Plaintiffs filed a Response [Doc. # 96], and the moving Defendants filed a Reply [Doc. # 103]. Because Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of their claims against any Defendant, this Motion for Summary Judgment is **denied as moot**.

    Also pending is Defendants' Objections to Plaintiffs' Summary Judgment Evidence [Doc. # 105], to which Plaintiffs filed a Response [Doc. # 107], and Defendants filed
(continued...)

full record and applied governing legal authorities, the Court **grants** the Motion and dismisses this case with prejudice.

## I.   <u>BACKGROUND</u>

R&M is a company that makes products used in the oil and gas industry. Plaintiffs, African-American males, worked for R&M at its facility in Willis, Texas. Small was hired as a machine operator, was later promoted to Warehouse Coordinator and, in February 2011, was promoted to shipping "lead man."  Hudson was hired as a Shipper/Receiver and, in late 2010, was promoted to Operations Clerk.

In 2010, the Willis plant was seriously behind schedule in meeting shipping deadlines.  In February 2011, R&M replaced the facility's Operations Manager with Randall Ray, who had worked for R&M for 29 years.  Ray was instructed to improve production and delivery times.

Ray soon learned of an ongoing dispute between the quality control department and the shipping and receiving department.  Ray determined that this dispute was causing a delay in shipments.  Ray decided to create a new position, Warehouse Supervisor, whose chief priority would be to improve the relationship between the shipping and the quality control departments. Ray selected Monica Full, a Caucasian

---

[1]     (...continued)
a Reply [Doc. # 109].  Because Plaintiffs' proffered summary judgment evidence does not raise a genuine issue of material fact on the dispositive issues, the Objections are **denied as moot.**

female, to fill the new Warehouse Supervisor position.[2]  Full had not worked in either the shipping or the quality control departments, but she had worked with and was respected by the employees in the two departments.  Additionally, Full had earned a Certificate of Production Inventory Management ("CPIM"), having completed a year of course work and having passed five exams, each lasting three hours.  Small and Hudson were displeased with the selection of Full for the Warehouse Supervisor position, and Small complained to Human Resources ("HR") Generalist Rebecca Macey that he believed the selection of Full was based on race.

Soon after assuming her responsibilities as Warehouse Supervisor, Full began to work with an HR employee to learn the Genesis Pro ("GenPro") timekeeping system used by R&M.  There are three ways to record time entries in the system:  (1) by punching a wall clock at the facility; (2) by punching a "web clock" on R&M's intranet; and (3) by accessing the password-protected GenPro software so supervisors could edit or correct time punch entries on employees' time records.  To familiarize herself with the GenPro system, Full reviewed recent time entries for all shipping employees.  Full noticed that Small had clocked out the prior evening at approximately 5:30 p.m., but Full had observed Small leave the facility around 4:15 p.m. and not return.  Full noticed also that there were time entries for Jared Watson,

---

[2]      Ray also created a new supervisory position, Plating Shop Supervisor, and selected an African-American male for that new position.

a Caucasian employee, on a day Full knew he had been absent.  Full notified the HR department, who referred the matter to R&M's information technology ("IT") manager, Mike Braden.

Braden conducted an investigation and determined that Small had obtained access to R&M's timekeeping system through a virtual-private-network ("VPN") from an offsite location.  Small repeatedly clocked in and clocked out from the offsite location, and also changed prior time entries for himself, Hudson, and Watson.  Small denies having manipulated the time records.

Small, Hudson, and Watson were fired on March 22, 2011.  R&M continued to investigate the time records of other warehouse workers, but found no similar pattern of suspicious activity by anyone else.[3]

Plaintiffs each filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and each received a Dismissal and Notice of Right to Sue. Plaintiffs each filed a lawsuit on January 4, 2012, alleging that Defendants failed to promote them on the basis of their race, and terminated their employment on the basis of their race and in retaliation for engaging in protected activity under Title VII.  The two cases were consolidated in April 2013.

---

[3]     The time records of Keith West had a few suspicious entries but, as discussed below, further investigation revealed West was actually at work at all times reflected in his time records.

After discovery was complete, R&M moved for summary judgment.  The Motion has been fully briefed and is now ripe for decision.

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving

party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See*

*Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the

non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*,

530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific

facts which show "the existence of a genuine issue concerning every essential

component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343

F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the

absence of any proof, the court will not assume that the non-movant could or would

prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*,

497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See*

*Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves*

*Brokerage Co.*, 336 F.3d at 412-413).  The Court is not required to accept the

nonmovant's conclusory allegations, speculation, and unsubstantiated assertions

which are either entirely unsupported, or supported by a mere scintilla of evidence.

*Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary

judgment unless they contain competent and otherwise admissible evidence. *See* FED.

R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000);

*Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A

party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

## III.   <u>FAILURE TO PROMOTE CLAIM</u>

Plaintiffs allege that the decision not to select either of them for the newly-created Warehouse Supervisor position was the result of race discrimination.  To avoid summary judgment on this claim, Plaintiffs must first establish a *prima facie* case by showing that (1) they was not selected for the more favorable position, (2) they were qualified for the position, (3) they were within a protected class at the time of the failure to promote, and (4) the defendant either promoted someone outside of that protected class or otherwise failed to promote the plaintiffs because of their race. *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).  For purposes of R&M's Motion, the Court assumes Plaintiffs could establish a *prima facie* case.

When a plaintiff establishes a *prima facie* case, he thereby "raises an inference of unlawful discrimination, which shifts the burden of production to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff." *Id.* at 347.  R&M has presented evidence that Plaintiffs were not hired for Warehouse Supervisor position because Ray wanted a person who had not been assigned to either

the warehouse or the quality control department.  Full, the person selected for the Warehouse Supervisor position, had not worked in either department, but had frequent contact with and was well respected by personnel in both departments.  "An employer's choosing the best-qualified candidate 'constitutes a legitimate, non-discriminatory justification for its failure to promote [an employee]." *Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 294 (5th Cir. Apr. 5, 2013) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881-82 (5th Cir. 2003)).

Where, as here, the defendant satisfies its burden of production, the burden shifts back to the plaintiff to prove that the defendant's stated reason is merely a pretext for race discrimination.  *Id.* (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).  Plaintiffs may satisfy this burden by showing that R&M's proffered reason for its decision was false, or by demonstrating that they were clearly better qualified than the person selected.  *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007).  To create a genuine issue of material fact regarding whether they were "clearly better qualified" than Full, Plaintiffs must present evidence "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have selected [Full] over [them] for the job in question."  *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) (quoting *Cooper*

*v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004)); *Deines v. Texas Dep't of Prot. & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999).

Plaintiffs have failed to present evidence that the proffered reason was false. Plaintiffs admit that there were communications problems between the quality control and the shipping departments.  Although Plaintiffs attempt to minimize the effect of those problems, they have presented no evidence that Ray did not genuinely believe the inability of the two departments to work together was having a negative impact on completing shipments in a timely manner.  They have presented no evidence that Ray did not consider resolving the problems between the two departments to be the new Warehouse Supervisor's top priority, and they have presented no evidence that Ray did not consider Full the best candidate to accomplish that priority.  It is undisputed that Ray selected a person who was not in either of the two contentious departments. "[A] subjective decision making process does not raise inferences of discriminatory conduct."  *Criner v. Texas-New Mexico Power Co.*, 470 F. App'x 364, 370 (5th Cir. May 7, 2012) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988)).

Additionally, Plaintiff has failed to present evidence that raises a genuine issue of material fact that either of them was "clearly better qualified" than Full, who had a positive working relationship with and was well respected by the employees in both the quality control and the shipping departments.  Both Small and Hudson had worked

for years in the shipping department and could be perceived as biased in favor of that department's position in the conflict.   Moreover, Full had particularly relevant experience; she had worked in the field of inventory management and held a Certificate of Production and Inventory Management ("CPIM").   It is undisputed that Small failed to complete successfully the five tests required for CPIM certification, and Hudson did not know anything about the CPIM certification program.   *See* Small Depo., Exh. G to K&M's Motion, p. 108; Hudson Depo., Exh. H to K&M Motion, p. 75.   Although Plaintiffs have presented evidence that they performed well in their respective positions in the shipping department, their evidence fails to demonstrate that they were clearly better qualified than Full for the newly-created Warehouse Supervisor position.[4]

Plaintiffs accordingly have failed to present evidence that raises a genuine issue of material fact that R&M's expressed reason for selecting Full rather than either Plaintiff for the new Warehouse Supervisor position was a pretext for race discrimination.   R&M thus is entitled to summary judgment on Plaintiffs' claim that the decision not to select them for the position was racially motivated.

---

[4]   Plaintiffs' attempt to demonstrate pretext by comparing Hudson's military service from 1995 to 2006 with Full's work as a manicurist for a year before college (Plaintiffs' Response, p. 19) is completely unpersuasive.

## IV.   DISCHARGE CLAIMS

Plaintiffs allege that they were discharged because of their race and because they engaged in protected activity.   To establish a *prima facie* case of race discrimination in connection with a termination, a plaintiff must demonstrate that he: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was treated less favorably than similarly situated persons who were not members of the protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).  To establish a *prima facie* case of retaliation under Title VII, the plaintiff must present evidence that (1) he engaged in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.  *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).  For purposes of R&M's Motion, the Court assumes that Plaintiffs could establish a *prima facie* case for each of their discrimination and retaliation claims regarding the termination of their employment.

A plaintiff's *prima facie* case creates an inference of discrimination and/or retaliation that shifts the burden back to the defendant to articulate a legitimate,

nondiscriminatory and nonretaliatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Lee*, 574 F.3d at 259.  The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993)).  In this case, R&M asserts that it terminated Plaintiffs' employment because they falsified time records.  Falsification of company records to obtain payment to which the employee is not entitled is a legitimate, nondiscriminatory reason for discharging an employee. *See, e.g., Cobb v. Singing River Health Sys.*, 503 F. App'x 290, 293 (5th Cir. Dec. 21, 2012); *Pittman v. Gen. Nutrition Corp.*, 515 F. Supp. 2d 721, 738 (S.D. Tex. 2007) (falsification of expense reports).

Because R&M has provided a legitimate explanation for its decision to terminate Plaintiffs' employment, the inference created by the *prima facie* case drops out, and Plaintiffs bear the burden to establish race discrimination and/or retaliation by offering evidence that K&M's stated explanation is a pretext for its true unlawful motive. *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 249; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

Plaintiffs argue that they did not falsify time records and that K&M's investigation was inadequate.  The relevant inquiry, however, is whether R&M

genuinely believed that Small and Hudson falsified time records, not whether that belief was accurate or based on a thorough investigation. *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 489 (5th Cir. 2004); *Corley v. Jackson Police Dep't*, 566 F.2d 994, 1003 (5th Cir. 1978).

Plaintiffs have presented no evidence that K&M did not genuinely, and indeed reasonably, believe that they had falsified time records.  Full, while learning the GenPro timekeeping system, noticed that Small's records indicated he clocked out at 5:30 p.m. on a day Full had observed him leave at 4:15 p.m. and not return.  Full noticed also that Watson, a Caucasian employee, had time entries for a day she knew he had been absent from work.  Full reported these time entries, and IT Manager Braden conducted an investigation.  Braden retrieved a history of Small's VPN logins from offsite locations.  For the day Full observed Small leave at 4:15 p.m., the VPN records indicated that Small connected to the GenPro system from an offsite location through the VPN at 5:27 p.m., and then clocked out remotely at 5:28 p.m.  The VPN records showed an IP address issued by Clearwire, an internet provider used by Small, but not by R&M.  Braden reported his findings to Bob Schmittauer, the HR Manager.

Schmittauer directed that the investigation be expanded to include the time records of all employees in the shipping department.  The investigation revealed that repeatedly during February and March 2011, the clock-in and clock-out times for

Small and Hudson were within two minutes of Small using the VPN connection to access K&M's network from an offsite location.[5]  Additionally, the electronic records revealed that Small had changed prior time entries for himself, Hudson, and Watson.

Braden continued to investigate to determine whether Small and Hudson had actually been working at their office computers on the weekends when Small entered the offsite time entries for those weekend dates.  The data established that neither Small nor Hudson had internet or other computer activity during the weekends they claimed to have been at work.

Based on its investigation, K&M determined that Small had falsified time records for himself, for Hudson, and for Watson.  All three employees were discharged.  Plaintiffs have failed to present evidence that K&M fired them for any reason other than K&M's genuine belief they had falsified time records.[6]

A plaintiff may establish pretext by demonstrating that the employer gave preferential treatment to another employee outside the protected class and under

---

[5]     Over a period of 38 days, Small punched his own clock entries on 29 of those days within a few minutes of logging into the system remotely.  On 14 of those days, Hudson's clock punches occurred just minutes after Small logged in remotely.

[6]     As noted above, Plaintiffs' arguments in their Response to K&M's Motion do not refer to expert testimony.  Nonetheless, the Court has reviewed the report written by Conklin, Plaintiffs' expert, and determined that nothing therein would raise a genuine issue of material fact on the pretext issue.  Conklin's expert opinions relate to alleged discovery deficiencies and to the adequacy of K&M's investigation.  The adequacy of the investigation, however, is not the relevant inquiry in the pretext analysis.  *See Pineda*, 360 F.3d at 489; *Corley*, 566 F.2d at 1003.

"nearly identical" circumstances.  *See Mack v. John L. Wortham & Son, L.P.*, 2013 WL 4758052, *10 (5th Cir. Sept. 5, 2013) (citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001)).  In this case, Plaintiffs have presented evidence that Keith West, a Caucasian employee in the shipping department, was not discharged.  West's time records revealed that he was clocked in or out near the time Small accessed the GenPro system from an offsite location on five occasions.  Further investigation revealed, however, that West had used the office computers on those weekend days when his time entries were near the time of Small's VPN logins.  Because the records established that West was actually working in the plant on the dates reflected in his time records, West's situation was not "nearly identical" to Small's or Hudson's.

Moreover, the employee whose situation was "nearly identical" to Small's and Hudson's was Watson, a Caucasian.[7]  It is undisputed that K&M discharged Watson along with Small and Hudson.

Plaintiffs have failed to present evidence that raises a genuine issue of material fact regarding whether K&M's stated reason for terminating their employment was

---

[7]     Plaintiffs' characterization of Watson as a "token white kid" (Plaintiffs' Response, p. 49) is both inappropriate and irrelevant.

a pretext for race discrimination and/or retaliation.  As a result, K&M's Motion is granted on these two claims relating to their discharge.

## V.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, Plaintiffs has failed to present evidence that raises a genuine issue of material fact regarding whether the decision not to select either of them for the newly-created Warehouse Supervisor position was racially motivated. Similarly, Plaintiffs have failed to present evidence that R&M's stated reason for terminating their employment was a pretext for race discrimination and/or retaliation. As a result, it is hereby

**ORDERED** that R&M's Motion for Summary Judgment [Doc. # 83] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.  It is further

**ORDERED** that Defendants' Motion to Exclude Expert Testimony of William A. Conklin [Doc. # 82], Defendants Robbins & Myers, Inc. and Robbins & Myers Energy Systems, Inc.'s Motion for Summary Judgment [Doc. # 85], Defendants' Objections to Plaintiffs' Summary Judgment Evidence [Doc. # 105] are **DENIED AS MOOT**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **4th** day of **October, 2013**.

Nancy F. Atlas
United States District Judge